Amco Investment Company v. Commissioner.
Amco Inv. Co. v. Commissioner
Docket No. 3740.
United States Tax Court
1945 Tax Ct. Memo LEXIS 270; 4 T.C.M. (CCH) 307; T.C.M. (RIA) 45092; March 13, 1945
Philip H. Alston, Esq., and J. E. Anderson, C.P.A., 1611 Rhodes-Haverty Bldg., Atlanta 3, Ga., for the petitioner. F. L. Van Haaften, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves deficiencies as follows for fiscal years ended on November 30 of the years shown: 1939
1940
1941
Income tax
$597.94
$1,317.15
$2,597.79
Declared value ex-
cess profits tax
331.67
Excess profits tax
1,671.06
In the respective taxable years the petitioner claimed $3,000, $5,200 and $7,200 as deductions for salary *271 paid to each of its three officers. In his determination of the deficiency, the respondent decreased the deductions to $2,000 for each officer. The sole question in issue is whether such action was proper. The petitioner filed its returns for the taxable years with the collector for the Atlanta Division, District of Georgia. The petitioner has completely disregarded our Rule 35 (b) with reference to statement of findings of fact, furnishing, instead of concise and numbered findings, merely the gist of the testimony of its witness, in narrative and extended form, with no reference to pages of the transcript. We have, nevertheless, not disregarded such narrative, nor adopted respondent's requested findings, but we make the following Findings of Fact The Ivan Allen-Marshall Co., a corporation, hereinafter referred to as the Marshall Co., was organized in 1900 and since then it has been engaged in the business of selling office supplies and equipment, furniture and school supplies and doing lithographing, printing and book binding work. It transacted business in seven states. The Marshall Co. never owned any real estate. Prior to 1938 it transacted business in premises leased from *272 a partnership composed of Ivan Allen and Charles M. Marshall, owners at that time of all of the stock of the Marshall Co. For the years ended February 28, 1928 to 1938, inclusive, Ivan Allen and Charles M. Marshall received as profits from their partnership amounts equal to 25.82 per cent of the gross rentals received by the partnership from the Marshall Co. In 1936 the members of the partnership organized the petitioner, a corporation, under the laws of Georgia and exchanged a parcel of real property, situated on Fairlie Street, Atlanta. Georgia, for all of its shares of stock, which were issued to them and Ivan Allen, Jr. In 1937, the petitioner purchased an improved parcel of real estate on Pryor Street, Atlanta, Georgia, containing 70,000 square feet of store space, for the purpose of leasing it to the Marshall Co. Petitioner expended about $30,000 reconditioning the property. The work required about six months and was supervised by petitioner's officers. Petitioner leased the business ground floor and three and one-half of the other six floors of the Pryor Street property on January 1, 1938, to the Marshall Co. for a period of 10 years for a monthly rental of 5 per cent *273 of the lessee's net sales for the previous month, subject to a minimum monthly rental of $1,500. The lessee agreed to make certain undisclosed changes, repairs and betterments in the rented space without cost to the lessor and to maintain the same during the life of the lease. Other parts of the building were on long term leases. At that time Pryor Street was a two-way street and the improvements on it were in a run-down condition. The King Hardware Co., wholesale dealers in hardware, occupied a building almost opposite petitioner's property. Petitioner's officers believed that if they could get Pryor Street "cleaned up", persuade the King Hardware Co. to move elsewhere and improve the buildings, the block could be converted into a good rental district. Charles M. Marshall was a past president of the Atlanta Chamber of Commerce and was a director of the Trust Company of Georgia, which was occupying a building on Pryor Street. Later, the Trust Company of Georgia purchased property adjoining petitioner's building and about 1939 spent $50,000 improving it. The King Hardware Co. moved to another location and a furniture company moved into the premises it vacated. The outside of other *274 buildings on the street were improved. The petitioner's president worked about one and one-half years to have the changes made. Pryor Street is now a one-way thoroughfare. Petitioner's president had the cooperation of the Atlanta Chamber of Commerce in the abovementioned improvements. The improvements made on Pryor Street caused an increase in the business of the Marshall Co. Its gross sales increased from $356,466 in 1936 to $711,000 in 1941. The increase in sales was due in part to improved facilities to transact business and change of location. The stock of Marshall Co. and petitioner during the taxable years was held, and their officers were, as follows: Ivan Allen-
Marshall
Company
Ivan Allen, Chairman
640
C. M. Marshall, President
325
Ivan Allen, Jr., Sec'y-Treas.
35
1000
Amco
Investment
Company
Ivan Allen, President
550
C. M. Marshall, Vice President
325
Ivan Allen, Jr., Sec'y-Treas
125
1000
The gross income, expenses and net income of petitioner, in round numbers, were as follows: 1938
1939
1940
1941
Income (rent)
$30,100
$37,500
$42,900
$54,700
Expenses
29,800
34,000
38,300
45,100
Net income
300
3,500
4,600
9,600
*275 Of the rental income, $20,317.70 was received from the Marshall Co. in 1938, $27,402.84 in 1939, $33,265.44 in 1940 and $46,320.44 in 1941. The remainder was paid by five other tenants. Aside from officers' salaries, practically all of the petitioner's expense was for interest on mortgage indebtedness, taxes and depreciation. The expenses included commissions of $375 each year paid to rental agents, salary of $1,800 to Ivan Allen and Charles M. Marshall and $2,400 to Ivan Allen, Jr., in 1938, and salary of $3,000 to each of the three officers in 1939, $5,200 to each in 1940 and $7,200 to each in 1941, and other salaries amounting to $1,036 in 1939, $1,179 in 1940 and $964.03 in 1941. Petitioner had no employees except a part time bookkeeper and at times an elevator operator and mechanic for repair work. Petitioner's officers received no salaries in 1937. It never paid a dividend. The Marshall Co. paid the following salaries to its officers: 1939
1940
1941
Ivan Allen, Chairman
$9,000
$9,000
$10,000
Charles M. Marshall,
President
9,000
9,000
10,000
Ivan Allen, Jr., Sec'y-
Treas
6,000
6,000
7,300 The salaries of officers in Marshall Co. had in *276 general been kept the same for a number of years, for the reason that the Company had about 100 employees and department heads, and any changes of salaries would have thrown that matter out of adjustment. Some undisclosed portion of the salaries paid petitioner's officers during the taxable years was paid to compensate them because of their view that their salaries as officers of Marshall Co. were inadequate. The income so used by petitioner was not required to meet the needs of its business. Charles M. Marshall devoted most of his time to buying merchandise and Ivan Allen, Jr., devoted most of his time to selling and personnel matters. Ivan Allen held offices in organizations other than petitioner and the Marshall Co., from one or more of which other organizations he received compensation for services rendered. The net income of the Marshall Co. for the respective taxable years, after deducting federal taxes, was $7,360.23, $19,973.61 and $24,492.46. It paid no dividends from 1936 to 1941, inclusive, except $15,000 in 1937. Its earnings were required for working capital. Income tax returns filed by the Marshall Co. for 1939, 1940 and 1941 contain statements that Ivan Allen devoted *277 all of his time to its activities. The salaries paid by petitioner to its officers in the taxable years were in excess of reasonable compensation for personal services actually rendered. Opinion Petitioner's counsel admitted at the hearing that the salaries claimed as deductions were "somewhat too high" and announced that he expected to show that petitioner's officers fixed their salaries at amounts to compensate them for the inadequate salaries they received as officers of the Marshall Co. Petitioner's president, the sole witness at the hearing, testified that the salaries of petitioner's officers, "towards the last," were too high and that the compensation paid to the officers of the Marshall Co. was inadequate. Upon brief petitioner requests us to allow aggregate salaries for its three officers of $9,701.31 in 1939, $11,085.96 in 1940, and $14,140.44 in 1941, an average of about $3,880 a year for each officer. The amount so requested is, for 1939, in excess of the salaries actually paid. It was shown that during a period of 11 years ending February 28, 1938, during which petitioner's predecessor, a partnership composed of Ivan Allen and Charles M. Marshall, officers and *278 stockholders of petitioner and the Marshall Co., rented premises to the Marshall Co. for the conduct of its business, the profits of the partnership averaged 25.82 per cent of the gross receipts received from the lessee. The salaries we are asked to allow as deductions were arrived at by applying that percentage to the gross income of petitioner during each of the taxable years. The statute allows as a deduction from gross income "a reasonable allowance for salaries or other compensation for services actually rendered." Section 23 (a) Internal Revenue Code. The sole point of difference between the parties is whether the salaries in question are reasonable. Though the discretion of the corporate officials should have definite weight on the question, in our opinion the method proposed by petitioner (based upon a percentage of Marshall Company's gross rentals for previous years as above seen) to determine reasonable compensation is unsatisfactory. It does not take into account actual services rendered to petitioner by each officer, the importance of their duties, results obtained, any comparison with salaries paid by comparable corporations for like services, *279 responsibilities assumed, or other facts essentially necessary to establish reasonableness of compensation for services rendered. The salaries we are asked to allow as deductions were determined by an arbitrary method, without regard to all material facts. The stockholders and officers of petitioner owned the stock and were the officers of the Marshall Co. and as such controlled the treasury of both corporations. Petitioner was created and existed for the primary purpose of providing quarters for the Marshall Co. and was operated somewhat in the nature of a department of the Marshall Co. The evidence shows that petitioner paid high salaries to its officers to compensate them for alleged inadequate compensation they received for services rendered as officers of the Marshall Co. No testimony was offered to show what portion of the salaries paid to petitioner's officers represented payments made to them for services rendered to the Marshall Co. Neither services to another corporation, under the circumstances here shown, nor a disinclination to adjust salaries of the officers of the other corporation in accord with duties to it, may logically be basis for deduction by the petitioner. *280 The salaries of petitioner's officers were increased from an average of $2,000 an officer in 1938 (the president and vice-president each received $1,800 and the treasurer, $2,400) to $3,000 for each officer in 1939, $5,200 in 1940 and $7,200 in 1941, with no proof of an increase of duties and responsibilities to the petitioner here, or of substantial increase in gross income, other than rents from the Marshall Co. Petitioner never paid a dividend, although it had net income each year after 1937, and paid the excessive salaries to its officers. This indicates a distribution of dividends in the guise of salaries. There is no evidence in the record of the duties performed for the petitioner by each officer or the time any of them devoted to petitioner's activities. Petitioner's president performed some services in connection with improvements made in the appearance of business properties on Pryor Street, where petitioner's building was situated. The Atlanta Chamber of Commerce cooperated with petitioner's president in improving the district. The improvement increased to some undisclosed extent the business of the Marshall Co. and the amount payable by it to petitioner for rent. The *281 work had some value to petitioner but the record lacks evidence to measure it for salary deduction purposes to petitioner. The nature of petitioner's business was such that it is doubtful whether much of their time was necessary. The returns of the Marshall Co. contained statements that Ivan Allen devoted all of his time to its affairs. Finally, petitioner offered no direct testimony on what would have been reasonable compensation for its officers. Neither was it shown that the salaries in the taxable years were fixed to cover compensation for services rendered in 1937, when no salaries were paid. Determinations of this Court on questions of this sort must be based upon substantial evidence in the record. We find none to support a finding that the allowances made by the respondent were erroneous. Upon brief, petitioner says that the respondent should have exercised his discretion under section 45 of the Internal Revenue Code, which authorizes the Commissioner, among other things, to allocate deductions between businesses owned or controlled by the same interests when necessary to clearly reflect income. The question was not raised by the pleadings and, therefore, *282 is not properly before us for consideration. W. P. Weaver, 2 B.T.A. 709; Jamieson Associates, Inc., 37 B.T.A. 92. Decision will be entered for respondent.